UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CIMCO RECYCLING OTTAWA, INC. | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 3:25 C 50021 |
| QUARTERBACK TRANSPORTATION INC., | ) ) Judge Rebecca R. Pallmeyer ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Cimco Recycling Ottawa, Inc. ("Cimco") alleges that it paid Defendant Quarterback Transportation, Inc. ("Quarterback") to transport a load of copper from Ottawa, Illinois to Granite City, Illinois. According to Cimco, Quarterback agreed to provide the transportation service and to take responsibility for the copper from the time it left Cimco's hands. The copper was loaded on the truck at Ottawa as planned, but never made it to Granite City; the truck's driver was duped into dropping the copper off at an (unspecified) location in Chicago instead. Seeking compensation for the loss, Cimco sued Quarterback in state court, alleging claims for breach of contract and breach of express warranty. After removing the case to this court on the basis of diversity, Quarterback moves to dismiss [16]. As explained below, the motion is granted in part and denied in part. Cimco's allegations support a claim for breach of contract, but not a claim for breach of express warranty.

## BACKGROUND

In considering Defendant's motion to dismiss for failure to state a claim, the court treats all well-pleaded allegations in the complaint as true and draws all inferences in Plaintiff's favor. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

Cimco is an Illinois corporation with its principal place of business in Loves Park, Illinois. (Compl. [15] ¶ 1.) Defendant Quarterback, a Delaware corporation with its principal place of

business in Mason, Ohio, allegedly acts as a "transportation broker." (*Id.* ¶¶ 2–3.) On April 18, 2024, Cimco's Executive Vice President, Scott Anderson, made contact by email with an employee of Quarterback named Rhys Campbell; copies of Anderson's email and Campbell's response, sent the same day, are attached to the complaint. (*Id.* ¶¶ 9–10; Ex. A to Compl. [15] at 7.) Anderson's message asked Campbell whether Quarterback was an "actual carrier" or a "broker," and suggested that if Quarterback is a carrier, Cimco and Quarterback might "do some [unspecified] business." (Ex. A to Compl.) Campbell responded as follows:

> We don't own the trucks, however we run a system where our drivers are typically owner-operators who are under contract with us to get them loads. For example, I have IL based drivers (who are under contract with us) calling me and asking me to get them freight. Once your load is on their trucks we are responsible and they are covered under our insurance.

(*Id.*)

Campbell's response does not appear to confirm that Quarterback is an "actual carrier," and Cimco now acknowledges that Quarterback ordinarily acts a "broker" rather than a carrier. (*See* Opp. [18] at 10–11.)[1] Cimco asserts, however, that on July 22, 2024, the parties nevertheless entered into an oral agreement in which Cimco would "tender monetary compensation" to Quarterback in exchange for Quarterback's "providing transportation services" for a load of copper from Ottawa, Illinois to Granite City, Illinois. (Compl. ¶¶ 12, 22.) Cimco entered into this agreement, it alleges, "based upon and in reliance upon" the April 18 communications between Anderson and Campbell. (*Id.* ¶ 13.) That is, Cimco alleges that in this instance, Quarterback "took undertakings to be legally responsible for the copper load once it was in its contracted carrier's truck and promised that its insurance would cover for damage or loss to the copper load on the carrier's truck." (Opp. at 11.) Cimco "fulfilled its obligations under the contract"—presumably, by paying Cimco the agreed fee for Quarterback's services (on a date

---

[1] A plaintiff may "supplement the complaint with factual narration" in its brief opposing a motion to dismiss, so long as the added factual detail is consistent with the allegations of the complaint. *Smith v. Dart*, 803 F.3d 304, 311 (7th Cir. 2015) (citations omitted).

and in an amount not stated in the complaint). (Compl. ¶ 23.) Quarterback proceeded to "engage[] with" a third party, T&T Freight Corp. ("T&T"), to "provide for [Cimco's] transportation needs" pursuant to the parties' contract. (*Id.* ¶ 14.)

On July 25, 2024, the copper was loaded onto T&T's truck at Cimco's facility in Ottawa, Illinois. (*Id.* ¶¶ 15–16.) At that time, T&T issued to Cimco a "straight bill of lading," also attached to the complaint. (Ex. B to Compl. [15] at 8–10.) The bill of lading accounts for some 45,000 pounds of "bare bright copper," to be delivered to a company called "Totall Metal Recycling, Inc." at 2700 Missouri Avenue in Granite City, Illinois. (*Id.* at 9.) The bill of lading, which does not appear to mention Quarterback, also states:

> "[i]t is mutually agreed, as to each carrier of all or any of said property over all or any portion of said route to destination, and as to each party at any time interested in all or any of said property, that every service to be performed hereunder shall be subject to all the terms and conditions of the Uniform Domestic Straight Bill of Lading . . . ."

(*Id.* at 9.) The bill of lading is signed, but it is not clear who signed it. Neither party discusses the bill in its briefing or explains how its "terms and conditions" might be relevant to this dispute.[2]

Although it was loaded according to plan, the copper never reached its appointed destination. While the copper was in transit on July 25, a fraudster impersonating an agent or employee of Quarterback contacted the T&T driver and directed the driver to transport the copper to a location in Chicago instead. (Compl. ¶ 16.) The complaint does not say where exactly the T&T driver was directed to deposit the copper, or even whether the T&T driver in fact delivered the copper to that location. What is clear from the complaint is that the copper load "has not been recovered" to date and that Quarterback has refused to compensate Cimco for the loss. (*Id.* ¶¶ 17, 32.) Cimco further alleges that it has made a claim for the value of the copper load—$185,291.62—against Quarterback's insurer (unnamed in the complaint), but the insurer has

---

[2] The bill of lading also suggests that at least some of its terms and conditions are printed on the back of the form, but the reverse side of the bill does not appear to be attached to the complaint, and the court is uncertain as to what the referenced, additional terms and conditions might be.

denied this claim. In this lawsuit, removed to federal court pursuant to 28 U.S.C. § 1441, Cimco seeks recovery in that amount from Quarterback. (*Id.* ¶ 26.)

## DISCUSSION

Cimco asserts two state law claims: one for breach of contract, and one for breach of express warranty. (*See* Compl. ¶¶ 19–34.) Cimco alleges that Quarterback is liable for breach of contract because it "failed to transport the copper load to the agreed upon destination in Granite City, Illinois." (*Id.* ¶¶ 24–25.) According to Cimco, Quarterback has breached an express warranty, as well, because it "expressly promised that it was responsible for the copper load" that formed the basis of the contract and that "its insurance covered the copper load," but both Quarterback and its insurer have "refused to compensate" Cimco for the loss. (*Id.* ¶¶ 29–33.) The parties appear to agree that Illinois law applies to both claims. (*See* Mem. [16-1] at 3, 6; Opp. [18] at 4, 9.) And the court's jurisdiction is secure: the parties are diverse in citizenship and the amount in controversy in the case exceeds $75,000.

To survive Quarterback's motion to dismiss under Rule 12(b)(6), Cimco's complaint need only plead enough facts to state a claim to relief that is plausible on its face, allowing the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 586 (7th Cir. 2021) (citations omitted). A claim for breach of contract under Illinois law requires the plaintiff to allege "(1) offer and acceptance, (2) consideration, (3) definite and certain terms, (4) performance by the plaintiff of all required conditions, (5) breach, and (6) damages." *Yash Venture Holdings, LLC v. Moca Fin., Inc.*, 116 F.4th 651, 657 (7th Cir. 2024), *reh'g denied*, No. 23-3200, 2024 WL 4257157 (7th Cir. Sept. 20, 2024) (citation omitted). Oral agreements are just as enforceable as written ones, "so long as there is an offer, an acceptance, and a meeting of the minds as to the terms of the agreement." *Id.* (citation omitted). A plaintiff need not allege every single term of the contract, so long as the "essential" terms are certain enough that there is a "basis for deciding whether the agreement has been kept or broken." *Id.* (citations omitted).

4

Cimco's allegations are straightforward: Cimco asserts that it struck an agreement to pay Quarterback a sum of money in return for Quarterback's transportation of the copper and assuming the risk of loss of the copper once the copper was loaded onto the truck. Cimco claims to have tendered the agreed payment, but Quarterback failed to meet either of its obligations. The copper not only never arrived in Granite City, but was lost altogether, and Quarterback reneged on its promise to assume the risk of loss, refusing to pay Cimco the value of the load of copper. These allegations are sufficient to state a claim of contract breach. Cimco's allegations, if proven, would support recovery of damages Cimco suffered as a result of Quarterback's failure to deliver the copper as agreed, and Quarterback's failure to assume the risk of loss renders it liable for the full value of the lost copper.

Quarterback presents a handful of additional arguments for dismissal of Cimco's claim for breach of contract; none are persuasive. First, Quarterback asserts that Cimco's complaint "fails to provide the most basic factual allegations to inform Quarterback of the oral contract's terms or specifying [sic] the provisions of [the] oral contract that were breached." (Mem. at 4; *see also id.* at 5 (arguing that the "absence of context regarding the nature of the agreement makes it impossible for Quarterback to reasonably ascertain" Quarterback's alleged "contractual responsibilities.")) True, Cimco did not allege when or how much it paid Quarterback for transportation services. But Quarterback has not satisfied the court that it is unable to understand the nature of Cimco's claim without those details. And Quarterback's suggestion that Cimco has not identified damages is frivolous; the loss of a load of copper is obviously costly.

Quarterback also suggests that it is entitled to dismissal because it operates as a "broker," rather than a "motor carrier"; that is, because it "provid[es], or arrang[es] for transportation by" motor carriers, rather than transporting goods itself. (*See* Mem. at 4–5 (arguing that Cimco's allegations that it contracted with Quarterback to "transport" and "be responsible for the load throughout the transport . . . may be appropriate for a motor carrier, but not for a broker.")) In

5

support of this proposition, Quarterback cites the Carmack Amendment of the Interstate Commerce Act, 49 U.S.C. § 13102(2), *et seq*. (*See id.* at 4.)

This argument does not carry water, either. True, the Carmack Amendment does not create a federal cause of action against transportation brokers; it creates "a nationally uniform rule of *carrier* liability concerning interstate shipments," preempting state law claims against carriers regarding such shipments.[3] *REI Transp., Inc. v. C.H. Robinson Worldwide, Inc.*, 519 F.3d 693, 697 (7th Cir. 2008) (citations omitted) (emphasis added); *see also Sompo Japan Ins. Co. of Am. v. B&H Freight, Inc.*, 177 F. Supp. 3d 1084, 1086 (N.D. Ill. 2016) (the Carmack Amendment speaks "only of *carrier* liability"); *Custom Cartage, Inc. v. Motorola, Inc.*, No. 98 C 5182, 1999 WL 89563, at *3 (N.D. Ill. Feb. 16, 1999) ("[t]he Carmack Amendment is silent on the issue of broker liability"). But Cimco is not suing Quarterback under the Carmack Amendment, nor could it: the statute does not apply to cases such as this one, where the shipment at issue was entirely intrastate.[4]

That leaves Cimco's breach of express warranty claim, based on Quarterback's alleged failure to follow through on its promise to take responsibility for the loss of the copper once it had been loaded onto T&T's truck. As this court understand the cause of action, express warranties are fundamentally promises "related to the quality or description of [] *goods*." *Mydlach v. DaimlerChrysler Corp.*, 226 Ill. 2d 307, 320, 875 N.E.2d 1047, 1058 (2007) (citation omitted); *see*

---

[3] The statute also imposes carrier liability on "freight forwarders," entities who assume "assemble and consolidate" multiple shipments, assume responsibility for the transportation of such shipments, and use "carriers" to accomplish the transportation of the shipments. *See* 49 U.S.C. §§ 13102(8), 14706(a); *see also Chemsource, Inc. v. Hub Grp., Inc.*, 106 F.3d 1358, 1361 (7th Cir. 1997).

[4] The court notes, further, that although the Seventh Circuit has not squarely ruled on the issue, several courts in this district have concluded that the Carmack Amendment does not preempt state law claims against brokers. *See, e.g., Brunner v. Beltmann Grp. Inc.*, No. 1:19 C 03396, 2020 WL 635905, at *6 (N.D. Ill. Feb. 11, 2020) (citations omitted); *Sompo*, 177 F. Supp. at 1086–87; *Custom Cartage*, 1999 WL 89563, at *3 (citations omitted). That is, even if the shipment at issue here *were* an interstate shipment, the Carmack Amendment's preemptive sweep would be relevant only if Quarterback indeed acted as a carrier in this case.

*also Vasco Trucking, Inc. v. Parkhill Truck Co.*, 6 Ill. App. 3d 572, 576, 286 N.E.2d 383, 386 (4th Dist. 1972) (citing *Warranty*, BLACK'S LAW DICTIONARY (4th ed. 1968) (a warranty is a "statement or representation made by the seller of goods, contemporaneously with and as a part of the contract of sale, though collateral to the express object of it, having reference to the character, quality, or title of the goods . . . ."))  Cimco has not cited authority for the notion that a claim of express warranty will lie where the contract in question does not involve the sale of goods, nor has Cimco identified relief that would be available on its purported warranty claim that would not duplicate contract damages.  The breach of warranty claim is dismissed.

## **CONCLUSION**

For the reasons described above, Quarterback's motion to dismiss [16] is granted in part and denied in part.  Cimco's claim for breach of express warranty is dismissed without prejudice. Quarterback is directed, within 21 days, to answer Cimco's claim for breach of contract, based on Quarterback's alleged failure to (a) ensure the copper was delivered to Granite City, Illinois and (b) assume financial responsibility for the copper after its loss.

ENTER:

Dated: September 3, 2025

_____
REBECCA R. PALLMEYER
United States District Judge